**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA,
IN AND FOR HILLSBOROUGH COUNTY**

CHRISTY ARRINGTON, an individual,
ROBERT FINKELSEN, an individual,
GIDGET KARLIK, an individual, and
HAROLD KING, an individual,

        Plaintiff/Petitioner,

vs.

CITY OF TAMPA, FLORIDA, an incorporated
municipality of the State of Florida

        Defendants.

_____/

**F I L E D**

JAN 0 4 2000

Date 8:00-cv-12-T-12E Time

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

CASE NO. 99- _9613_

**VERIFIED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND FOR ATTORNEYS' FEES
AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, CHRISTY ARRINGTON, an individual, ROBERT FINKELSEN, an individual, GIDGET KARLIK, an individual, HAROLD KING, an individual, who for their cause of action against CITY OF TAMPA, FLORIDA, an incorporated municipality of the State of Florida, states as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Plaintiffs, all of whom are individuals alleged to have performed and/or managed and/or operated adult entertainment performance dance cabarets within the City of Tampa. The City of Tampa is currently in the process of adopting a proposed "no

1



contact" ordinance, as yet not numbered, but designated as File No. E99-8 Ch 14.  One Public

Hearing was held on November 18, 1999, at which time the City Attorney's Office described the

purposes for the proposed ordinance, generally described as an alleged increase in sexually

transmitted diseases, prostitution, and secondary effects. No evidence was introduced on November

18, 1999.  On November 19, 1999, the undersigned Counsel made a Public Records Request,

pursuant to Chapter 119, Florida Statutes, for "[A]ll materials the City Attorney's Office intends to

present to City Council in support of proposed 'no contact/six-foot' ordinance..."  In response, the

City of Tampa provided a number of different police reports, as well as a videotape which is a

compilation of undercover video surveillance of various female entertainers' performances.  Upon

review, it was determined that the videotape included performances by Plaintiffs currently charged

with State criminal violations for the very performances depicted, or other Plaintiffs currently

charged with State criminal violations allegedly for allowing such performances to take place.  The

other segments of the videotape include performances which still may be the source of charges for

State criminal violations.  The proposed publication and/or exhibition of the performances on the

videotape violate the Plaintiffs' Constitutional Rights in that such publication and/or exhibition at

the December 2, 1999, Public Hearing will result in irreparable harm from adverse pretrial publicity

surrounding the proposed ordinance and will:

   a.     violate the Plaintiffs' rights to a fair trial as secured by the Sixth and Fourteenth

          Amendments to the United States Constitution, and Article I, § 22 of the Florida

          Constitution;

b.       violate the Plaintiffs' rights to be protected from unreasonable search and seizure as

secured by the Fourth and Fourteenth Amendments of the United States Constitution

and Article I, § 12 of the Florida Constitution;

Plaintiffs seek a Emergency Temporary Injunction, declaratory and permanent injunctive

relief with respect to the proposed publication and/or exhibition of the subject videotape, in addition

to other relief.

## II. JURISDICTION

2.       This is an action for declaratory and injunctive relief.

3.       This is an action related to local government regulations imposed on exotic dance

performances and on proprietary interests in such performances, exceeding $15,000.00, as the

minimum amount in controversy.

4.       All  parties are residences of, located or doing business in the City of Tampa,

Hillsborough County, Florida.

5.       This is an action for temporary and permanent injunctive relief and for a declaratory

judgment and related relief.  The jurisdiction of this Court is invoked pursuant to Chapter 86 et.seq.,

Florida Statutes, which authorizes circuit courts to enter declaratory judgments related to controversies

within the monetary jurisdiction of the circuit court.  The jurisdiction of this Court is also invoked

pursuant to Rule 1.610, Florida Rules of Civil Procedure, Chapter 26.012(3), Florida Statutes, which

authorizes the circuit courts to enter injunctions, and the inherent power of Florida courts to grant

injunctive relief.

6.       The jurisdiction of this Court is also invoked pursuant to Article I, § 2, 4, 5, 9, 10, 12,

21, and 23, of the Constitution of the State of Florida, as well as this Court's authority to enforce

Federal Constitutional guarantees under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and the protection of Civil Rights under 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

## III. THE PARTIES

7.     Plaintiff, ROBERT FINKELSEN, an individual, is alleged to have performed and/or managed and/or operated adult entertainment performance dance cabarets within the City of Tampa, wherein violations of Florida Criminal Statutes allegedly occurred. Mr. Finkelsen is currently charged in the pending case of *State v. Robert Finkelsen*, Case No.: 98-00034658, County Court in and for Hillsborough County.

8.     Plaintiff, HAROLD KING, an individual, is alleged to have performed and/or managed and/or operated adult entertainment performance dance cabarets within the City of Tampa, wherein violations of Florida Criminal Statutes allegedly occurred.  Mr. King is currently charged in the pending case of *State v. Harold King*, Case No.: 98-00034658, County Court in and for Hillsborough County.

9.     Plaintiff, GIDGET KARLIK, an individual, is alleged to have performed and/or managed and/or operated adult entertainment performance dance cabarets within the City of Tampa, wherein violations of Florida Criminal Statutes allegedly occurred.  Ms. Karlik is currently charged in the pending case of *State v. Gidget Karlik*, Case No.: 98-5745, County Court in and for Hillsborough County.

10.     Plaintiff, CHRISTY ARRINGTON, an individual, is alleged to have performed and/or managed and/or operated adult entertainment performance dance cabarets within the City of Tampa, wherein violations of Florida Criminal Statutes allegedly occurred. Mrs. Arrington is

currently charged in the pending case of *State v. Christy Arrington*, Case No.: 98-5747, County Court in and for Hillsborough County.

11.     Defendant, CITY OF TAMPA, FLORIDA, is an incorporated municipality of the State of Florida, a political subdivision duly organized and existing under the laws of the State of Florida, duly governed by Chapter 119 and Chapter 166, Florida Statutes.

## GENERAL ALLEGATIONS

12.     Prior to November 18, 1999, the City of Tampa initiated efforts to draft a proposed "no contact" ordinance, prohibiting any form of physical contact, expressive or otherwise, between entertainers and patrons or other entertainers at adult entertainment businesses.

13.     During this process of adopting a proposed "no contact" ordinance, as yet not numbered, but designated as File No. E99-8 Ch 14, one Public Hearing was held on November 18, 1999, at which time the City Attorney's Office described the purposes for the proposed ordinance, generally described as an increase in the transmission of sexually transmitted diseases, crime and other adverse secondary effects, coupled with an allegation that various incidental conduct incorporated into an exotic dance performance would be "viewed as enhancing the transmission of disease," and based on additional concerns over "difficulty" for law enforcement at such businesses. No evidence was introduced by the City in support of the proposed ordinance on November 18, 1999.

14.     The November 18, 1999, hearing was heavily attended, and was the subject of intense media attention and broadcasting.

15.     During said hearing, dozens of people spoke in opposition to the proposed ordinance, including, but not limited to:

5

- Dr. John R. Feegel, M.D., JD, M.PH. Dr. Feegel who testified that incidental expressive contact in adult entertainment establishments does not serve as a disproportionate environment for the transmission of communicable diseases.

- Dr. Randy Fisher, Ph.D., University of Central Florida. Dr. Fisher testified that there is **no** supportable evidence to establish that adult entertainment, such as that contemplated by the proposed ordinance causes sexually aberrant behavior, and further, that the patrons of the subject establishments actually possess above-average characteristics.

- Dr. Judith Hanna, Ph.D., University of Maryland. Dr. Hanna testified that the proposed restrictions will have a direct and detrimental impact on the communicative value and overall experience manifested through expressive contact incorporated into an exotic dance performance.

- Dr. Daniel Linz, University of California, Santa Barbara. Dr. Linz testified that there is no legitimate evidence linking modern-day adult entertainment cabarets with so-called "adverse secondary effects." He will further testify that voluminous studies indicate that exposure to and/or participation in expressive contact incorporated into an exotic dance performance simply does not lead to any of the alleged governmental interests enumerated in the proposed ordinance.

- G. Hartley Mellish, Ph.D., Forensic Economist. Mr. Mellish testified that the economic impact of the proposed ordinance will have dramatic and far-reaching negative effects.

16.     In addition to the expert witnesses specified above, many members of the community spoke in opposition, none of whom presented any substantial competent evidence substantiating the proposed governmental predicates.

17.     In spite of the compelling testimony indicating the absence of any legitimate governmental purpose advance the proposed ordinance the City Council, after five (5) hours of hearing, unanimously approved the ordinance for an official second public hearing.

18.     In recognition of the vast public attention and overwhelming media attention focused on the subject issue, the Chairman of the City Council directed that the subsequent Public Hearing would be held on December 2, 1999, at the Tampa Convention Center.

19.     On November 19, 1999, the undersigned Counsel made a Public Records Request, pursuant to Chapter 119, Florida Statutes, for "[A]ll materials the City Attorney's Office intends to present to City Council in support of proposed 'no contact/six-foot' ordinance…"

20.     In response, the City of Tampa provided a number of different police reports, which were not made available until November 29, 1999, as well as a videotape which was a compilation of undercover video surveillance of various female entertainers performances, which was not available until November 30, 1999.

21.     Upon review, it was determined that the videotape included performances by Plaintiffs currently charged with State criminal violations for the very performances depicted, or other Plaintiffs currently charged with State criminal violations allegedly for allowing the subject performances to take place.

22.     The other segments of the subject videotape include performances which still may be the source of charges for State criminal violations.  Pursuant to Florida Law, the Statute of Limitations has not passed for any allegedly criminal conduct depicted on the subject videotape.

23.     In the pending criminal cases for all specifically named Defendants, Motions to Suppress the subject undercover surveillance videotapes are presently pending, and have not been ruled upon by the various criminal courts considering said motions.

24.     In addition to the pending criminal cases pertaining to the portrayals on the subject videotapes, the companion police reports provided pursuant to Chapter 119, Florida Statutes relate directly to pending criminal cases and to the Defendants named therein.

25.     On November 29, 1999, undersigned Counsel was informed by local media members that the City, at the behest and invitation of the City Attorney's Office, published, and/or exhibited

7

and/or distributed to members of local religious organizations with the specific intent of offending said viewers with the content of said videotape.

26.   The above specified publication and/or exhibition and/or distribution of said videotape was initiated ostensibly to garner support for the passage of the proposed ordinance and to inspire the attendance of members of the congregations of the religious organizations who were not the intended and probable recipients of the performances memorialized on the subject videotape.

27.   Said publication of the videotape was done without the consent, grant of license, or release by the named Plaintiffs to authorize said publication and/or exhibition and/or distribution of said videotape and no act waiving same was directly or indirectly undertaken by the Plaintiffs.

28.   The performances depicted on the subject videotape are the property of the subject entertainers presenting various performances.

29.   As such, said property was illegally seized due to the fact that either a warrant, nor a prior judicial determination of probable cause was obtained by law enforcement prior cessation of the above referenced, presumptively protected erotic dance performances.

30.   Plaintiffs assert their position, set forth in this Complaint, is legally sound and supported by fact and law.  The Defendants' actions, however, have created a *bonafide* controversy between the parties, and Plaintiffs are in doubt as to their rights, privileges and immunities with respect to the challenged Manatee County Ordinances.  Plaintiffs require, therefore, a declaratory judgment declaring their rights, privileges and immunities.  There is a clear, present, actual, substantial and *bonafide* justiciable controversy between the parties.

31.   Plaintiffs have no adequate remedy at law.  No amount of money damages could adequately compensate the Plaintiffs for the irreparable harm described herein.  The Plaintiffs in this

8

case wish to preserve their rights under the Fourth and Sixth Amendments to the United States Constitution. Protecting their rights to a fair trial and protecting them against unreasonable search and seizure. Neither damages, replevin, attachment nor any other legal remedy will suffice to safeguard the exercise of that right. In order to constitute an "adequate" legal remedy, the remedy at law must be plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of justice. It is unquestionable that no legal remedy would ever suffice to properly address state action which ultimately results in denying citizens rights guaranteed by the Fourth and Sixth Amendments.

32.     Plaintiffs will suffer irreparable injury if injunctive relief is not granted, and Defendant, City of Tampa, is permitted to publish and/or exhibit and/or distribute the above referenced materials relating to ongoing criminal prosecutions. The loss of rights guaranteed by the Fourth and Sixth Amendments is so serious that irreparable injury must be presumed.

33.     The public interest would best be served by the granting of injunctive relief, and indeed, the public interest is disserved by permitting the denial of Fourth and Sixth Amendment rights under the United States Constitution, or the corresponding protections of the Florida Constitution.

34.     All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

35.     The acts, practices and jurisdiction of Defendant, City of Tampa, as set forth herein, were and are being performed under color of state law and therefore constitute state action within the meaning of the Fourteenth Amendment to the Constitution of the United States.

36.     The failure to grant the injunctive relief requested herein will result in irreparable harm as established by the affidavits attached hereto as Exhibits "C," "D," "E," "F," and "G."

37.     The proposed publication and/or exhibition of the performances on the videotape violate the Plaintiffs' Constitutional Rights in that such publication and/or exhibition at the December 2, 1999, Public Hearing will:

a.      violate the Plaintiffs' rights to a fair trial as secured by the Sixth Amendment to the United States Constitution;

b.      violate the Plaintiffs' rights to be protected from unreasonable search and seizure as secured by the Fourth Amendment of the United States Constitution;

c.      violate the Plaintiffs' rights to privacy under both Federal Constitutional guarantees and Article I, Section 23, of the Constitution of the State of Florida;

d.      violate the Plaintiffs' rights to the proprietary interests and/or common law copyright protection to the performances at issue.

Plaintiffs seek a Temporary Restraining Order, declaratory and injunctive relief with respect to the proposed publication and/or exhibition and/or distribution of the subject videotape, in addition to other relief.

## CLAIMS FOR RELIEF

### COUNT I
### (Sixth Amendment)

38.     Plaintiffs' reallege the allegations contained in paragraphs 1 through 37 as if fully rewritten herein.

39.     Pursuant to the Sixth Amendment to the United States Constitution, and Article I § 22, of the Florida Constitution, Plaintiffs have standing to assert a right to a fair trial through the appropriate judicial action to control prejudicial pretrial publicity.

40. The common law right of access to judicial records, both to the press and to the public has been recognized. However, said common law right of access is not absolute.

41. When the concern is the efficient administration of justice and protecting the right to a fair trial, free from the irreparable harm of prejudicial pretrial publicity, the prevention of the irreparable harm caused by adverse pretrial publicity must be ensured the Court.

42. The proposed publication and/or exhibition and/or distribution of the subject videotape relating to the Plaintiffs' subject criminal cases, as well as the various pending motions to suppress illegally obtained evidence mandates that the Court enjoined both temporarily and permanently said videotape from public dissemination.

**WHEREFORE,** Plaintiffs pray for a declaration that the publication and/or exhibition and/or distribution of the subject videotape and pending criminal case materials, is a violation of the Plaintiffs' Sixth Amendment rights, and for injunction and supplemental relief awarding some or all of the following relief:

a. Issuing a temporary injunction, on an emergency basis enjoining the Defendant from the publication and/or exhibition and/or distribution of the subject videotape and pending criminal case materials, either on an *ex parte* basis or after an emergency hearing on the merits of the application;

b. Issuing a permanent injunction, prior to or after the trial of this matter, enjoining the Defendant, the City of Tampa, from the publication and/or exhibition and/or distribution of the subject videotape and pending criminal case materials, in any other proceeding other than that involving the respective pending criminal cases.

c. Awarding costs and such other supplemental relief as may be just and appropriate.

## COUNT II
### (Fourth Amendment)

43.     Plaintiffs' reallege the allegations contained in paragraphs 1 through 37 as if fully rewritten herein.

44.     Pursuant to the First Amendment to the United States Constitution the erotic dance performances at issue herein, as reflected by the videotape at issue herein, are presumptively protected by the First Amendment to the United States Constitution.

45.     As such, the constructive seizure of the subject dance performances as depicted on said videotape without a prior judicial determination of probable obscenity, and/or without a warrant, is illegal and cannot lawfully occur.

46.     Moreover, pursuant to Chapter 119, Section 119.07(3)(b), et seq., Florida Statutes at issue herein are not subject to disclosure under Florida's Public Records Law.

**WHEREFORE,** Plaintiffs pray for a declaration that the publication and/or exhibition and/or distribution of the subject videotape and pending criminal case materials, is a violation of the Plaintiffs' Fourth Amendment rights, and for injunction and supplemental relief awarding some or all of the following relief:

a.      Issuing a temporary injunction, on an emergency basis enjoining the Defendant from the publication and/or exhibition and/or distribution of the subject videotape and pending criminal case materials, either on an *ex parte* basis or after an emergency hearing on the merits of the application;

b.      Issuing a permanent injunction, prior to or after the trial of this matter, enjoining the Defendant, the City of Tampa, from the publication and/or exhibition and/or

distribution of the subject videotape and pending criminal case materials, in any other

proceeding other than that involving the respective pending criminal cases.

c.     Awarding costs and such other supplemental relief as may be just and appropriate.

## COUNT III
### (Declaratory Judgment)

47.     Plaintiffs' reallege the allegations contained in paragraphs 1 through 37 as if fully

rewritten herein.

48.     Pursuant to Section 847.08, Florida Statutes, the State may apply to the Court for the

issuance of an Order demanding production of any obscene material for the purpose of having the

Court determine whether probable cause exists to determine whether said material is obscene.

49.     Plaintiffs are in doubt as to their rights and obligations, and therefore require a

declaration from the Court, after the Court has review the subject videotape, in camera, as to the

possible obscenity of the videotape at issue herein.

**WHEREFORE,** Plaintiffs pray for a declaratory judgment establishing the possible obscenity

of the subject videotape.

## PRAYER FOR ATTORNEY'S FEES AND DEMAND FOR JURY TRIAL

50.     Plaintiffs have and will suffer from irreparable harm, for which there is no adequate

legal remedy, unless the injunctive and declaratory relief requested herein is granted.

51.     The actions of Defendant complained of herein were and are actions under color of state

law designed to deprive Plaintiffs of rights and privileges guaranteed by the Constitution and Laws of

the United States, as well as the Constitution and Laws of the State of Florida.

52.     In the legitimate desire to pursue the rights and privileges guaranteed by the

Constitution and Laws of the United States, as well as the Constitution and Laws of the State of Florida, the Plaintiffs have employed the undersigned attorneys to prosecute this action and have agreed to pay a reasonable fee for same.

53.     Accordingly, Plaintiffs are entitled to an award of attorney's fees as provided for by 42 U.S.C. § 1988.

54.     The Plaintiffs herein would demand a jury trial on all issues so triable.

Respectfully submitted,


Luke Charles Lirot, Esquire
LUKE CHARLES LIROT, P.A.
112 East Street, Suite B
Tampa, Florida 33602
(813) 221-9533 TEL
(813) 221-9175 FAX
Florida Bar Number 714836
Co-Counsel for Plaintiffs

David Scott Boardman, Esquire
D. SCOTT BOARDMAN, P.A.
1710 East Seventh Avenue
Tampa, Florida  33605-3806
(813) 242-6265 TEL
(813) 241-0704 FAX
Florida Bar Number 933480
Co-Counsel for Plaintiffs



# LUKE CHARLES LIROT, P.A.

ATTORNEY AND COUNSELOR AT LAW
112 EAST STREET, SUITE B
TAMPA, FL 33602



(813) 221-9533 TEL

(813) 221-9175 FAX

November 19, 1999

**VIA HAND DELIVERY**
Ms. Janet S. Martin
City Clerk
City of Tampa
315 E. Kennedy Blvd.
Tampa, Florida 33602

**VIA HAND DELIVERY**
James Palermo, Esquire
City Attorney's Office
315 E. Kennedy Blvd.
Tampa FL  33602-5211

**VIA HAND DELIVERY**
Richard Fee, Esquire
Assistant City Attorney
101 E. Kennedy Blvd.  #1030
Tampa FL  33602

RE:   *Public Records Request, pursuant to Florida Statutes, Chapter 119*
      Proposed "No Contact / Six-Foot" Ordinance

Dear Gentlepeople:

Pursuant to Florida Statutes, Chapter 119, I hereby make a Public Records Request for the following information specified below.  Payment for any photocopies or other method of duplication of the requested materials is hereby proffered, and will be made as soon as their cost is identified. I would respectfully request that these materials be provided as soon as possible, and that this request be considered cumulative and continuing up to and including December 2, 1999. I would like all relevant materials now in any party's possession as soon as possible, but, respectfully, no later than November 23, 1999.

1.     All materials the City Attorney's Office intends to present to City Council in support of proposed "no contact/six-foot" ordinance, as referenced by Rick Fee, Esquire, at the November 18, 1999, City Council meeting.

Thank you for your professional courtesies.  Do not hesitate to call my office with any questions or

*Exhibit 1*

...d teacher and whether teach-are the best and only way to lty members. That debate is subjects facing the state's eparation Committee, which day in Tampa.

a major issue in public educa-awrence Marazza, superinten-chua County schools and a a statewide teacher prepara-

"There is a teacher shortage, period," said David Binnie, assistant superintendent in charge of personnel for Hillsborough County schools. "It's an applicants' market. They may or may not want to go to a low-performing school."

Several districts already are experimenting with alternative routes to the classroom. For instance, Hillsborough County has about 70 teachers in an "alter-

Some educators have suggested that teacher preparation go in the other direction entirely. Deans of the colleges of education in Florida have discussed the merits of a five-year education degree (resulting in a master's degree), based on the belief that a traditional four-year degree might not be enough to fully train teachers.

"I don't understand the idea of sending

erable to hire teachers who follow the traditional route to the classroom, but they say it's not always possible.

"We would welcome a few good math teachers, even if they don't have the college of education background," said John Long, superintendent for Pasco County schools. "It's better to have someone like that and train them, than to have a string of subs or somebody teaching out of field."



Times photo — DIRK SHADD
Chuck Jensen, by his truck, and Bobby Klem fill up their vehicles Monday at co, where unleaded regular gasoline was $1.28 a gallon.

## prices
## across
## state

overseas on oil supplies es to their highest level a year in Florida.

y that before most Thanksgiving rices go up a penny or two per ekend, prices were up as much as around the state, marking the rices per gallon in more than a

it may be months before prices again.

othing about (the prices)," said elly Carlson, 22, who remembers f filling up on regular at 99 cents a

### Gas prices on the rise

The average cost of a gallon of regular, unleaded gasoline has soared in the bay area in 1999.



Source: AAA Auto Club South          Times art

about $26 a barrel.

Buss attributed the Thanksgiving jump to Iraq's decision on Nov. 22 to suspend oil exports in a clash with the United Nations over economic sanctions.

# Greco gives clergy a peek at sex video

■ **The footage from strip clubs, filmed by police, is aimed at stirring support for a lap dancing ban.**

**By STEVE HUETTEL**
*Times Staff Writer*

TAMPA — Trying to enlist support for the city's proposed ban on lap dancing, Mayor Dick Greco gave religious leaders a peek Monday of what really goes on inside some of Tampa's strip clubs.

The highlight was graphic video shot by undercover police that showed women performing apparent sex acts on customers and each other.

Greco seemed to make his point with the crowd: The law isn't about lap dancing. It's about cracking down on lewd acts and prostitution at the city's seediest clubs, lingerie modeling and body-scrub shops.

"I was appalled, totally appalled," said the Rev. Randy White, senior pastor of Without Walls Church International Church on Boy Scout Road.

"We're talking masturbation, we're talking oral sex, we're talking about live sex acts on stage. I believe the public has only heard one side of the story. If they knew what we were seeing, they'd be outraged."

White was so worked up that he activated a telephone tree in which church members will make more than 30,000 calls by this afternoon urging people to support the ordinance.

He predicted about 1,000 supporters will be at the Tampa Convention Center Thursday afternoon when the City Council takes a final vote on the law that would require adult entertainers to stay at least 6 feet away from customers and other

support exists for the ordinance.

"If it's a legitimate issue, concern would rise naturally — not at the (instigation) of the city," he said.

The clubs and employees may go to court to keep the city from using the video at Thursday's meeting, he said. A club manager still faces charges in connection with one of the videotaped incidents, Lirot said, and he might not get a fair trial if the tape is played in public.

The video showed undercover footage from two clubs, Deja Vu Showgirls on Adamo Drive and the Men's Club, which used to operate at Cypress Avenue and West Shore Boulevard.

Last year, police twice arrested performers and a manager at Deja Vu after observing "girl-on-girl" shows.

The most recent bust last November came after a performance by two Miami women who use the stage name Maiden America. Ads in adult entertainment magazines promoted them as "The Original Sisters of Sin" and "Censored in 21 States."

Jennifer Leigh Homan, 24, and Virginia Jo Schwartz, 31, were charged with committing or engaging in lewdness. So was Robert James Finkelsen, 39, the night manager.

The women's show involves only simulated sex acts protected by the First Amendment, said Lirot, who represents Finkelsen and one of the performers.

He and Redner argue that the tapes and voluminous arrest reports prove the city is capable of busting dancers who commit lewd acts or prostitution.

The ordinance would cripple clubs like Redner's that rely on lap dances, they say. Customers pay $20 to have a naked or scantily dressed woman rub against their bodies to

# City says video shows dark side of adult clubs



ockwise, and
n were pronounced
ene. Jaclyn Ayala
id Sanders is
fair condition.

hree] of our own stu-

ough sheriff's Cpl.
sher said James was
th on Bruce B.
-15 mph over the
iph speed limit when
ough the red light,

**See USF, Page 6 ▶**

# Bay

sels, acting as filters,
help clean up Tampa

that it will make the
ill be filtering out the
a senior scientist for

they are filtering may
a.

message we're try-
g said. "Even if they
en, they may not be

se a threat to native
out and spreading dis-
ance headaches for

what it all will

ir freshwater cous-
lustrial intake pipes,

**SHELLFISH, Page 6 ▶**

**TAMPA** – City officials arm themselves with explicit, undercover video in their fight to ban contact in adult clubs.

By KEN KOEHN
of The Tampa Tribune

Two weeks ago, children of Tampa's exotic dancers offered emotional testimony about hard-working moms they said are being unfairly targeted by the city's quest to ban lap dancing.

When Mayor Dick Greco's aides make their case Thursday, those same children will be asked to leave the room.

That's because a key city weapon in an effort to ban contact at adult clubs will be undercover police video showing what appear to be graphic sex acts on stage.

"I think there's a misconception about what this is about," City Attorney James Palermo said. "This isn't just about lap dancing. It's about the prevention of crime."

Greco's staff plans to show the tape at a city council meeting at 1 p.m. Thursday in the Tampa Convention Center. An overflow crowd in the council's chambers Nov. 18, when the public commented on the issue, prompted the city to find a bigger venue.

After the meeting Thursday, the council will take a final vote on an ordinance that would require nude dancers to stay six feet away from their customers and each other.

While the video won't be shown on government access TV, city council members and the audience of several hundred will get an eyeful.

The tapes show what appear to be acts of oral sex between female performers. They also show contact between customers and nude dancers, dancers rubbing the breasts of other performers and one performance featuring a

sexual aid attached to a remote-controlled toy truck.

"It's crazy," Greco said Monday. "The average person does not understand what this is. They think it's just a bunch of girls dancing."

The mayor gave a group of Tampa ministers a preview of the tape Monday at police headquarters. He said he wanted to show it to a "smattering of people who might have a moral conscience about things."

Attempts to reach the ministers were unsuccessful.

Mons Venus owner Joe Redner, whose club was not featured in the police video, questioned why the mayor would curry support from ministers heading into Thursday's showdown.

"I think the mayor has lost his cool," Redner said. "Showing ministers sex movies? I am dumbfounded."

He said he wondered what distinguished Greco's actions — airing sexually explicit tape — from pornography. And he said he resents the city cutting into his business because of acts that may have occurred at other clubs.

Palermo said the tapes are evidence needed for the record to show the potential spread of disease and the commission of crimes at adult clubs in Tampa.

**See DANCING, Page 3 ▶**

## Clarification

▶ A state university system task force plans to meet this week to begin defining a plan to eliminate race in school admissions, but system Chancellor Adam Herbert is expected to release the first studies of potential effects at a later date. The timing of his release was unclear in a story Monday.

son's hiring of a family friend complaint filed by a Tallahassee resident Monday with the Florida Commission on Ethics, Chief Inspector General Marcia Cooke is accused of a "coverup" and a "whitewash" to exonerate Henderson, who heads the state Department of Business and Professional Regulation.

Cooke this month reported she was unable to substantiate that Henderson used "inappropriate influence" to hire the family friend, who was a guard at Henderson's gated community in Tampa.

Cooke's investigation concluded that managers use inappropriate influence and recommended that the agency re-evaluate the hiring of Jean Saint-Louis.

Eugene Danaher, who filed the ethics complaint, contends that Henderson played a direct role in hiring Saint-Louis, an intimate friend of her children's nanny.

Efforts to reach Cooke for comment Monday were unsuccessful. A spokesman for Gov. Jeb Bush did not return telephone calls.

The ethics commission does not comment on whether c

Danaher gives 22 exam what he sees as Henderson in the hiring, including 12 statements from agency pe gathered by investigators.

"In ignoring the facts," naher wrote in the complai Cooke has created a seriou carriage of justice. ... Ms. C wears the mantle of statut dates to determine and rep true facts."

The hiring of Saint-Lou spring raised concerns amo

# DANCING / Club owner says acts shown on tape simulated

◄ From Page 1

Deja Vu Showgirls owner Hal King, whose club was the site of some footage, said the eyes of city leaders deceive them. The acts shown on tape were simulated, he said. "To the best of my knowledge, simulation of sex is not an illegal act," King said.

Palermo laughed at the suggestion the tapes show only simulated sex, saying the visual evidence is clear. "I guess you've just got to check your vision," he said.

City officials say police have to go through exhaustive undercover operations in sometimes dimly lit clubs to prove lewd acts are being committed. A 6-foot buffer separating dancers from each other and their customers takes out the guesswork, they say.

"So the police don't have to do their job?" Redner asks. "Why don't they just put the military in the streets after dark and there would be no crime at all."

If the ordinance becomes law,

violators — customers, dancers or club managers — could be fined $1,000 for each violation, receive six months in jail or both.

Many Florida counties have distance requirements between dancers and customers.

"Tampa is an exception to the rule," said Councilman Bob Buckhorn, who supports the contact ban. "We stand out like a beacon of deviant behavior throughout the state."

Some politicians wonder if the city has better things to do.

Councilwoman Linda Saul-Sena remembers divisive meetings when the city renamed Buffalo Avenue for the late Rev. Martin Luther King Jr. She also remembers the day the council approved rights protections for gays.

Saul-Sena, who said she doesn't know how she will vote Thursday, suggested that lap dancing doesn't reach the level of civic importance associated with those votes.

► Ken Koehn can be reached at (813) 259-7954 or kkoehn@tampatrib.com

( Tampa Bay )
5 Star Isuzu Dealers
ISUZUDEALERS.com
Florida's #1 SUV Website!

"How My Friends & I Knock Out Arthritis Pain– and other Types of

## AFFIDAVIT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH:

BEFORE ME, the undersigned authority, personally appeared HAROLD KING and, after being duly cautioned and sworn, deposes and states:

1. My legal name is HAROLD KING, and I have direct personal knowledge of the facts stated herein.

2. I am the Defendant in the pending State Court action entitled State v. Harold King, Case No.: 98-1707, County Court in and for Hillsborough County, Florida. This case is still pending.

3. I have knowledge of the contents of the videotape provided by the City of Tampa in response to a Public Records Request asking that all evidence intended to be presented during the public hearing to be held on December 2, 1999, for the proposed adoption of the "no contact" ordinance, identified as File No.: E99-8 Ch 14.

4. This subject videotape contains undercover surveillance footage depicting the alleged conduct which, the above specified pending criminal action is based.

5. If this videotape is allowed to be exhibited and/or published at said Public Hearing, I will be irreparably harmed and prejudiced by the release of selected and misleading aspects of my performance to the general public at this specified Public Hearing in violations of my rights to a fair trial causing me to suffer irreparable harm, for which I have no other remedy.

6. Any performance which is the subject of said videotape, is my property and I have neither consented nor executed any written release waiving any proprietary interest I may have in same. The performance in question is intended solely for the entertainment of the intended recipient audience for which I have given express written permission .

7. I have not signed any release or issued any license to any entity, including but not

Page 1 of 2

limited to governmental entity,  to exhibit and/or publish my performance, except as otherwise

provided herein.

8.    I have read the forgoing complaint and make this affidavit under oath in support

of the complaint and any motion for temporary restraining order or injunctive relief, and the facts

stated therein are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.


By: _____
HAROLD KING

Sworn to and subscribed before me this _____ day of December, 1999, by _Harold Charles_
_King_, who is personally known to me and did take an oath.
_Fla. D.L. # K520-343-49-029-0_

_____
Notary Public


**Page 2 of 2**

## AFFIDAVIT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH:

BEFORE ME, the undersigned authority, personally appeared CHRISTY NICHOLS ARRINGTON and, after being duly cautioned and sworn, deposes and states:

1.   My legal name is CHRISTY NICHOLS ARRINGTON, and I have direct personal knowledge of the facts stated herein.

2.   I am the Defendant in the pending State Court action entitled State v. Christy Nichols Arrington, Case No.: 98-5747, County Court in and for Hillsborough County, Florida. This case is still pending.

3.   I have knowledge of the contents of the videotape provided by the City of Tampa in response to a Public Records Request asking that all evidence intended to be presented during the public hearing to be held on December 2, 1999, for the proposed adoption of the "no contact" ordinance, identified as File No.: E99-8 Ch 14.

4.   This subject videotape contains undercover surveillance footage depicting the alleged conduct which, the above specified pending criminal action is based.

5.   If this videotape is allowed to be exhibited and/or published at said Public Hearing, I will be irreparably harmed and prejudiced by the release of selected and misleading aspects of my performance to the general public at this specified Public Hearing in violations of my rights to a fair trial causing me to suffer irreparable harm, for which I have no other remedy.

6.   Any performance which is the subject of said videotape, is my property and I have neither consented nor executed any written release waiving any proprietary interest I may have in same.  The performance in question is intended solely for the entertainment of the intended recipient audience for which I have given express written permission .

7.   I have not signed any release or issued any license to any entity, including but not

**Page 1 of 2**

*Exhibit D*

limited to governmental entity,  to exhibit and/or publish my performance, except as otherwise provided herein.

8.      I have read the forgoing complaint and make this affidavit under oath in support of the complaint and any motion for temporary restraining order or injunctive relief, and the facts stated therein are true and correct.

**FURTHER AFFIANT SAYETH NAUGHT.**

By: _____
CHRISTY NICHOLS ARRINGTON

Sworn to and subscribed before me this ___1___ day of December, 1999, by Christy Nichols
Arrington , who is personally known to me and did take an oath.
Fla. D.L.# AG52-114-74-811-0

_____
Notary Public

DONNA K. MAINES
MY COMMISSION # CC 601351
EXPIRES: February 9, 2001
Bonded Thru Notary Public Underwriters

**Page 2 of 2**

## AFFIDAVIT

**STATE OF FLORIDA**
**COUNTY OF HILLSBOROUGH:**

BEFORE ME, the undersigned authority, personally appeared **GIDGET WILSON KARLIK**, and, after being duly cautioned and sworn, deposes and states:

1.  My legal name is **GIDGET WILSON KARLIK**, and I have direct personal knowledge of the facts stated herein.

2.  I am the Defendant in the pending State Court action entitled **State v. Gidget Wilson Karlik, Case No.: 98-5745**, County Court in and for Hillsborough County, Florida. This case is still pending.

3.  I have knowledge of the contents of the videotape provided by the City of Tampa in response to a Public Records Request asking that all evidence intended to be presented during the public hearing to be held on December 2, 1999, for the proposed adoption of the "no contact" ordinance, identified as File No.: E99-8 Ch 14.

4.  This subject videotape contains undercover surveillance footage depicting the alleged conduct which, the above specified pending criminal action is based.

5.  If this videotape is allowed to be exhibited and/or published at said Public Hearing, I will be irreparably harmed and prejudiced by the release of selected and misleading aspects of my performance to the general public at this specified Public Hearing in violations of my rights to a fair trial causing me to suffer irreparable harm, for which I have no other remedy.

6.  Any performance which is the subject of said videotape, is my property and I have neither consented nor executed any written release waiving any proprietary interest I may have in same. The performance in question is intended solely for the entertainment of the intended recipient audience for which I have given express written permission .

7.  I have not signed any release or issued any license to any entity, including but not

Page 1 of 2

*Exhibit E*

limited to governmental entity,  to exhibit and/or publish my performance, except as otherwise provided herein.

8.   I have read the forgoing complaint and make this affidavit under oath in support of the complaint and any motion for temporary restraining order or injunctive relief, and the facts stated therein are true and correct.

**FURTHER AFFIANT SAYETH NAUGHT.**

By: _Gidget Wilson-Karlik_

GIDGET WILSON KARLIK

Sworn to and subscribed before me this __1st__ day of December, 1999, by _Gidget Wilson Karlik_ _____, who is personally known to me and did take an oath.

Fla. D.L. # K642-299-65-962-0

_Donna K. Maines_

Notary Public

DONNA K. MAINES
MY COMMISSION # CC 801351
EXPIRES: February 9, 2001
Bonded Thru Notary Public Underwriters

## AFFIDAVIT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH:

BEFORE ME, the undersigned authority, personally appeared ROBERT FINKELSEN and, after being duly cautioned and sworn, deposes and states:

1. My legal name is ROBERT FINKELSEN, and I have direct personal knowledge of the facts stated herein.

2.     I am the Defendant in the pending State Court action entitled State v. Robert Finkelsen, Case No.: 98-34658, County Court in and for Hillsborough County, Florida.  This case is still pending.

3.     I have knowledge of the contents of the videotape provided by the City of Tampa in response to a Public Records Request asking that all evidence intended to be presented during the public hearing to be held on December 2, 1999, for the proposed adoption of the "no contact" ordinance, identified as File No.: E99-8 Ch 14.

4.     This subject videotape contains undercover surveillance footage depicting the alleged conduct which, the above specified pending criminal action is based.

5.     If this videotape is allowed to be exhibited and/or published at said Public Hearing, I will be irreparably harmed and prejudiced by the release of selected and misleading aspects of my performance to the general public at this specified Public Hearing in violations of my rights to a fair trial causing me to suffer irreparable harm, for which I have no other remedy.

6.     Any performance which is the subject of said videotape, is my property and I have neither consented nor executed any written release waiving any proprietary interest I may have in same.  The performance in question is intended solely for the entertainment of the intended recipient audience for which I have given express written permission .

7.     I have not signed any release or issued any license to any entity, including but not

**Page 1 of 2**

*Exhibit F*

limited to governmental entity, to exhibit and/or publish my performance, except as otherwise provided herein.

    8.    I have read the forgoing complaint and make this affidavit under oath in support of the complaint and any motion for temporary restraining order or injunctive relief, and the facts stated therein are true and correct.

**FURTHER AFFIANT SAYETH NAUGHT.**

By:    _____

        **ROBERT FINKELSEN**

    Sworn to and subscribed before me this ____ day of December, 1999, by *Robert James Finkelsen*, who is personally known to me and did take an oath.

    *Fla. D.L.# F524-770-58-471-0.*

          **Notary Public**

DONNA K. MAINES
MY COMMISSION # CC 601361
EXPIRES: February 8, 2001
Bonded Thru Notary Public Underwriters

**Page 2 of 2**